(87 South. 862)

## GREEN v. STONE.

## STONE v. GREEN.

## (6 Div. 89, 89–A.)

(Supreme Court of Alabama. Dec. 23, 1920. Rehearing Denied Feb. 19, 1921.)

1. Corporations ⬖80(12)—Stockholder, rescinding subscription for fraud, becomes creditor.

If a contract of subscription to stock is rescinded by a stockholder, defrauded in its procurement, he becomes a creditor of the corporation to the amount of moneys he has paid to it by reason of the fraud, and his claim becomes a charge against it, subject to any paramount claims of creditors who may have thereafter dealt with the corporation relying on his subscription.

2. Banks and banking ⬖63½—Defrauded subscriber's claim not prior to creditors without knowledge of the fraud.

After one induced to subscribe for bank stock by fraud had become a stockholder and while he was held out as such stockholder and before his rescission for fraud, not only depositors but also any other creditors would be preferred creditors whose claims would be paramount to his, unless such depositors or creditors had knowledge of or were chargeable with notice of the fraud inducing his subscription.

On Rehearing.

3. Receivers ⬖163—Where estate sufficient to pay claims in full, interest is payable on interest-bearing claims.

Generally, if, as the result of good fortune or good management, the estate proves sufficient to discharge the claims in full, interest as well as principal should be paid, and this

⬖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

is not stopped by the appointment of a receiver; that is, interest upon contracts which provide for interest does not stop running when the property passes into the hands of the court.

**4. Receivers ☞163—Interest payable on a superior lien until satisfied.**

In the distribution of the proceeds of a common security between liens of different priorities, interest is not stopped on the amount of a superior lien until it is satisfied.

**5. Interest ☞5—Reserved in contract is matter of right; as damages, discretionary.**

Where interest is reserved in the contract or is implied in the nature of the promise, it becomes a part of the debt and recoverable as of right; but, when it is given as damages, it is often a matter of discretion.

**6. Banks and banking ☞63½—Defrauded subscriber held entitled to interest on amount paid after payment of all other claims.**

In suit by defrauded subscriber to bank stock to recover the amount paid on the subscription, the principal of debts of the bank, which was in the hands of the superintendent of banks, would be first paid in the following order: Costs of the suit and of administration; taxes, including assessments; compensation to the receiver for services in caring for the fund; for services or expenses of realization; for services or expenses of preservation; to the creditors; and then, if after payment of the principal of all debts there remained a fund applicable to interest, all creditors should receive payment thereof in the foregoing order, after which complainant would be entitled to interest from the date of his judgment out of any balance undistributed; and any balance then remaining would be distributed pro rata to stockholders other than complainant.

Anderson, C. J., and McClellan, J., dissenting.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Kinzea Stone, filed originally against A. E. Walker, Superintendent of Banks, and afterwards amended as against D. F. Green, as Superintendent, to rescind and cancel a contract of subscription for stock in the Jefferson County Bank, whose affairs were then being administered by the Superintendent of Banks. From a decree granting relief, the Superintendent of Banks appeals, and complainant files cross-appeal. Affirmed in part, and in part reversed and remanded.

For the facts, see former report 201 Ala. 130, 77 South. 554, L. R. A. 1918C, 839.

Coleman & Coleman, Spain & Fisk, of Birmingham, for appellant.

A subscriber to the capital stock cannot rescind his subscription, and be classed as a creditor after the insolvency of the bank has intervened and the rights of creditors have attached, and certainly cannot exercise the right to rescind the subscription where there has been a considerable amount of indebtedness contracted or incurred by the bank after such subscription. 1 Thompson on Corporations, §§ 736–738; 67 Minn. 267, 69 N. W. 904; 23 Atl. 889; Morawetz on Corporations, § 595; 1 Cook on Corporations, § 164, 74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727; 68 S. E. 834; 181 U. S. 202, 21 Sup. Ct. 585, 45 L. Ed. 822; 89 Hun, 564, 35 N. Y. Supp. 550; 93 Pac. 523; 95 U. S. 665, 24 L. Ed. 523; 91 U. S. 45, 23 L. Ed. 203; 91 U. S. 56, 23 L. Ed. 220; 91 U. S. 65, 23 L. Ed. 384; 22 How. 380, 16 L. Ed. 349; 74 W. Va. 636, 82 S. E. 509, L. R. A. 1915D, 792; 30 Ala. 92; 77 Ala. 357, 54 Am. Rep. 60. Jackson was not the agent of the corporation. 87 Ala. 206, 6 South. 41, 13 Am. St. Rep. 23; 106 Mich. 90, 64 N. W. 3, 29 L. R. A. 63, 58 Am. St. Rep. 468; 103 Ky. 529, 45 S. W. 779.

James A. Mitchell, of Birmingham, for appellee.

The law of the case was settled on the former appeal. 201 Ala. 130, 77 South. 554, L. R. A. 1918C, 839. Fraud infected the transaction. 1 Thompson on Corporations, §§ 715 and 717; 1 Cook on Corporations, § 148; section 4298, Code 1907. Under the circumstances shown by this case, the right of rescission after insolvency is shown. 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900; 74 W. Va 636, 82 S. E. 509, L. R. A. 1915D, 792; 173 Ky. 776, 191 S. W. 500, L. R. A. 1917C, 890; 126 Ark. 194, 189 S. W. 666, L. R. A. 1918A, 554.

On the cross-appeal, counsel insist that the complainant should be allowed interest on his claim from the time the money was paid, and not from the rendition of the decree. 233 U. S. 261, 34 Sup. Ct. 421, 58 L. Ed. 596; 23 R. C. L. 104; 69 Ala. 155.

THOMAS, J. The first appeal in this cause, styled Stone v. Walker, is found in 201 Ala. 130, 77 South. 554, L. R. A. 1918C, 839, and note of other authorities.

The equity of the bill was tested by demurrer, and the questions of law now raised were fully considered by the court on the original hearing and on the application for rehearing. After mature deliberation, these questions were decided, it is true, by a divided court, the majority of which, as now constituted, favoring the equity of the bill. In the opinion many cases are cited and reviewed, as well as the doctrine of the various courts and text-writers on the subject. Some of the questions, or kindred questions, were discussed in Wright v. Hix, 203 Ala. 425, 83 South. 341. In the latter case a majority of the court did not adopt the opinion of the writer, believing that the questions discussed were not necessary to a decision of the case in hand. Some of the questions discussed in the minority opinion in Wright v. Hix are not dicta in the instant case, and are in accord with the majority opinion on the former appeal of this case. However

this may be, many authorities on the subject before us are there collected.

[1, 2] On former appeal, after reviewing the authorities on the subject, it was decided that the insolvency of the corporation would not defeat the right of a defrauded stockholder to rescind on the ground of fraud in the procurement of his subscription, if without culpable negligence on his part such stockholder had failed to learn of the fraud before insolvency of the corporation; and that a bill to rescind for such fraud would lie against a receiver of such insolvent corporation or against an assignee thereof, if not a bona fide purchaser. That is, if a contract of subscription to the capital stock of a corporation was rescinded by a stockholder, defrauded in its procurement, he became a creditor of the corporation to the amount of moneys which he had paid to the corporation by reason of the fraud, and his claim would become a charge against the corporation, subject to any paramount claims of creditors who may have thereafter dealt with the corporation, relying upon the subscription of the complainant for stock in the corporation. After the complainant had become a stockholder in such bank and while he was held out as such stockholder and before his rescission for fraud, the depositors in the bank or, as for that, any other of the creditors, would be preferred creditors whose claims were paramount and should be preferred to that of complainant; unless such depositors or creditors had knowledge of or were chargeable with notice of the fraud perpetrated on complainant by the promotors of the corporation that resulted in the procurement of his subscription to its capital stock. If such depositors or creditors had no knowledge, or were not chargeable with notice, of the fraud in the procurement of complainant's said subscription, the claims of such depositors or creditors were paramount to that of the defrauded stockholder. Of the class of depositor-creditors, due notice was taken in the decree that protected their equities. However, it should be said further that any creditor who dealt with the bank, relying upon the complainant's subscription to the stock of the corporation as being a part of its capital stock prior to disaffirmance, and who had no knowledge or notice of the fraud causing complainant to subscribe for the capital stock, prior to the creation of his indebtedness, shall be preferred to the claim of the complainant.

The lower court seems to have ruled on the trial in accordance with the holding of the former appeal as to the equities of the bill. The proof, if not without dispute, overwhelmingly shows that the material equities of the bill were established and that complainant was entitled to the relief prayed.

The decree of the circuit court, in equity, ordering that the claim of complainant shall be "paid along with the other general creditors of the said bank, subject to the priority of the claims of the depositors as aforesaid," failed to safeguard the paramount claims of subsequent creditors of the bank, if such there be, who, as we have indicated, should be given priority over complainant, and in this it was in error.

It follows that, to the extent indicated, the decree of the circuit court, in equity, is reversed on main appeal; in other respects the decree is affirmed.

Affirmed in part; in part reversed, and remanded.

SAYRE, SOMERVILLE, and GARDNER, JJ., concur.

ANDERSON, C. J., and McCLELLAN, J., dissent.

BROWN, J., not sitting.

On Rehearing.

THOMAS, J. [3] The cross-appellant (appellee) claims interest only upon condition that there are funds enough to pay the "principal and interest in full on all claims against the estate of the Jefferson County Bank." As a general rule, "if, as the result of good fortune or good management, the estate proves sufficient to discharge the claims in full, interest as well as principal should be paid," and this is not stopped by the appointment of a receiver; that is that interest upon contracts which provide for interest does not stop running when the property passes into the hands of the court. Spring Coal Co. v. Keech, 239 Fed. 48, 152 C. C. A. 98, L. R. A. 1917D, 1152, and notes. When the estate is insolvent, it is immaterial to the creditor whether the dividend is calculated on the basis of the principal alone or the principal and interest combined, if claims of like dignity are so computed.

[4, 5] In Central Trust Co. v. Condon, 67 Fed. 84, 98, 14 C. C. A. 314, 328, Judge Taft said:

"This is not a case where the distribution is to be made pro rata between the lienholders and the bondholders, in which case, of course, interest is not to be calculated upon the claims after the time of the sequestration of the property for sale and distribution, so long as the claims cannot be paid in full."

In the distribution of the proceeds of a common security between liens of different priorities, interest is not stopped on the amount of the superior lien until it is satisfied. "As between the bondholders and the lienholders, the lienholders are entitled to interest to the day of payment." Chemical National Bank v. Armstrong, 59 Fed. 372, 8 C. C. A. 155, 28 L. R. A. 231, 239; Armstrong v. Am. Exch. Nat. Bank, 133 U. S. 433, 470, 10 Sup. Ct. 450, 33 L. Ed. 747. Where interest is reserved in the contract,

or is implied by the nature of the promise, it becomes a part of the debt and recoverable as of right; but when it is given as damages it is often matter of discretion. Redfield v. Y. I. Co., 110 U. S. 174, 3 Sup. Ct. 570, 28 L. Ed. 109; Richmond & Irvine Constr. Co. v. Richmond, etc., Co., 68 Fed. 105, 15 C. C. A. 289, 34 L. R. A. 625.

In First National Bank of Houston v. Ewing, 103 Fed. 168, 190, 43 C. C. A. 150, after referring to the case of Thomas v. Western Car Co., infra, the general rule announced by the Supreme Court was declared "applicable to cases where the fund is to be shared by creditors without liens or by those having liens of equal and common rank. But where there are claims of several classes, with liens of different priorities, the holders thereof are entitled to interest down to the date of the decree."

In Huff v. Bidwell, 218 Fed. 6, 133 C. C. A. 646, the rule applied in the settlement of insolvent estates, as between creditors who stand upon an equal basis, for the purpose of distribution, was that interest stops as to all upon the institution of the proceeding, but that this principle does not prevail as against creditors having a prior lien on specific property; nor does it prevail where the estate "of the alleged insolvent turns out to be ample to pay all his creditors in full of principal and interest."

The rule was stated in American Iron & Steel Mfg. Co. v. Seaboard Air Line R. R. Co. (1914) 233 U. S. 266, 267, 34 Sup. Ct. 502, 504 (58 L. Ed. 949), where the contest as to interest was by a statutory lien creditor as against one claiming priority over mortgages. Mr. Justice Lamar thus announces the rule:

"As a general rule, after property of an insolvent is in custodia legis interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest, from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt. But that rule did not prevent the running of interest during the receivership; and if as the result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid. * * * The principle is not limited to cases of technical bankruptcy, where the assets ultimately prove sufficient to pay all debts in full, but principal as well as interest, accruing during a receivership, is paid on debts of the highest dignity, even though what remains is not sufficient to pay claims of a lower rank in full."

The disallowance is based on the principle that any delay in the settlement of the estate for which interest might run is the act of the law, and not of the insolvent debtor, and is applicable to claims which are certain and to those which are uncertain so far as the latter may be entitled to interest. Penna. Steel Co. v. N. Y. C. Ry. Co., 198 Fed. 721, 117 C. C. A. 503.

The two cases most frequently cited to the effect that interest does not run on claims against an estate after the appointment of a receiver therefor, on foregoing reasons, are Thomas v. Western Car Co., 149 U. S. 116, 13 Sup. Ct. 824, 37 L. Ed. 663, and People v. Amer. Loan & T. Co., 172 N. Y. 371, 65 N. E. 200. In the latter case the charter of a loan and trust company whose affairs after dissolution were in process of settlement through a receiver, provided that in case of dissolution, the debts due from it in certain capacities, including that of depositary of savings bank funds, should have a preference. This was a provision of the general banking law of the state. The court held that interest on certain claims of savings banks and others entitled to a preference in the settlement of the affairs of the corporation should not be allowed after appointment of the receiver, either at the contractual or legal rate, where the allowance of interest would exhaust the funds in the hands of the receiver and leave nothing for the unpreferred creditors. Possibly this case can be distinguished from other cases in which interest after the appointment of a receiver has been allowed to preferred creditors although the estate was insolvent, on the ground that the preference there was given by statute rather than by the contract; the court saying that, as the statute did not state that preferred claims should be paid with interest to the date of payment, the courts should not, because the claims of substantially all the creditors, both preferred and unpreferred, were alike in origin, being created by the deposit of money; and that preferences in derogation of the common law should not be extended by construction beyond the express command of the statute.

In Thomas v. Western Car Co., supra, the holding was that as no definite time was agreed upon as to payment, interest was disallowed because the delay in payment was occasioned by resisting the demands made by the car company for car rentals which

the result of the litigation shows were excessive if not extortionate; that the contract company was in default and interest was allowable from the time it failed to pay according to its promise by way of compensation for the delay in payment. It is there stated:

"As a general rule, after property of an insolvent passes into the hands of a receiver or of an assignee in insolvency, interest is not allowed on the claims against the funds. The delay. in distribution is the act of the law; it is a necessary incident to the settlement of the estate. Williams v. American Bank, 4 Metc. 317, 323; Thomas v. Minot, 10 Gray, 263."

The court rested the refusal or disallowance of interest on car rentals accruing during the receivership of the old contract because available funds were not sufficient to pay the bonds, saying:

"We see no reason in departing from this rule in a case like the present, where such a claim would be paid out of moneys that fall far short of paying the mortgage debt."

So much for the general discussion of .the subject.

The insistence of cross-appellant is that the decree should expressly provide that if there are funds sufficient to pay all prior or superior claims with interest and the claim of complainant, his claim should bear interest from one of the dates indicated. It is not shown by the record that there will be funds for distribution sufficient to pay all prior claims against the bank. This could hardly be ascertained before final disposition, or before all assets of the estate are converted into cash. Another cross-error assigned related to what claims of the Jefferson County Bank should have priority of payment over that of complainant. A similar question arises on assignment of error on direct appeal. Cross-appellant insists that no priority should be allowed any creditor of the bank because of failure of allegation on the part of respondent in answer, which would tender an issue on the point. However, we regard the issue as presented by the averment in the pleading and by the proof as to warrant the court by its decree to protect prior claims of all depositors of the bank, as were protected by the decree, and to protect the rights of creditors who became such subsequent to complainant's subscription for capital stock, relying on an unimpaired capital stock, provided such creditors had no knowledge of or were not chargeable with the fraud perpetrated by the promoters of the corporation, and the result of which was his subscription to the capital stock of the Jefferson County Bank.

[6] In aid to the lower court in distribution, we will say after further consideration that it will distribute the funds in its keeping by payment of all costs of this proceedings and of administration (1 Clark's Law of Receivers, § 821 et seq.); payment to the proper authorities for taxes including assessments, if any there be; to the receiver as remuneration for services in caring for the fund; for services or expenses of realization; for services or expenses of preservation; and to the creditors of the corporation. That is to say, as. to the principal of the debts of creditors, the same will be paid in accordance with the priorities heretofore indicated. If, after the principal of all debts shall have been paid, there remains a fund which may be applied to interest, all creditors shall receive payment thereof in the order already indicated; after which complainant shall be paid interest from the date of his judgment out of any balance undistributed; after which, if there still remains any balance, it shall be distributed pro rata among the stockholders of the corporation other than the complainant.

The decree of the trial court is modified to the extent as we have indicated, and as so modified is affirmed.

Affirmed in part, and in part reversed and remanded.

SAYRE, SOMERVILLE, and GARDNER, JJ., concur.

ANDERSON, C. J., and McCLELLAN, J., dissent.

MILLER, J., not sitting.